for any crime or offence against the United States, for what purpose? The act of congress informs us, that it is for trial before such court of the United States, as by that act has cognizance of the offence. Now, the crime with which this prisoner is charged, is not against the United States, and the arrest or detainer is avowedly asked, not for the purpose of a trial before any court of the United States. The case of piracy is embraced by the provision of this law; for that is a crime against all nations, and amongst others, against the United States; but, moreover, the constitution authorizes congress to define and punish piracy. Congress has defined and provided for its punishment. We are, then, executing a law, made in pursuance of the constitution, when we take jurisdiction of that offence. So strict has been the doctrine, as to the judicial officers of one government executing the criminal laws of another, that, although the act of congress authorizes state magistrates to arrest, for crimes against the United States, yet the general court of Virginia sustained the legality of their warrants, only upon the ground, that it was competent to have authorized private persons to act, and that magistrates are designated as a class of persons by their name of office.

In conclusion I will say, that the counsel who made this application, has presented it in the strongest light, which the principles of public law or the authorities enabled him to do; yet, after the best reflection which I have been able to bestow upon the subject, in the short time which I have had to consider it, I am of opinion, that, without a treaty stipulation, this government is not under any obligation to surrender a fugitive from justice, to another government, for trial; and that, as a judicial officer of the United States, I have no authority whatsoever, either to arrest or detain, with a view to such surrender. It follows, as a consequence, that the prisoner is entitled to his discharge; and he is discharged accordingly.

---

## Case No. 4,017.

### In re DOTY.

[16 N. B. R. 202;[1] 1 N. W. Rep. (O. S.) 165; 10 Chi. Leg. News, 1; 25 Pittsb. Leg. J. 24.]

District Court, D. Minnesota.    Aug. 22, 1877.

BANKRUPTCY—PROVABLE DEBTS.

No debt can be proved on which an action could not be maintained against the bankrupt in the state where the petition is filed, in case bankruptcy proceedings were not instituted.

I, Henry C. Butler, one of the registers of said court in bankruptcy, do hereby certify that, in the course of the proceedings in said cause before me, the following question arose pertinent to said proceedings, and was

---

[1] [Reprinted from 16 N. B. R. 202, by permission.]

stated and agreed to by the counsel for the opposing parties, to wit: Messrs. Start & Gove, who appeared for the assignee of the bankrupt [A J. Doty], and opposed the allowance of the claim hereinafter described, and Messrs. Jones & Gove, who appeared for Tennis S. Slingerland, and one of the creditors of said bankrupt. The said Tennis S. Slingerland, on the 15th of March, 1877. made and filed his proof of debt for $734.24, and such proof of debt and claim against the estate of said bankrupt is predicated upon two promissory notes made by said bankrupt to said Slingerland; one of which was made and delivered on the 3d day of July, 1868, for the sum of $179, with interest at 12 per cent. per annum, payable in one year from said date; the other was made on the 5th day of August, 1869, for the sum of $194.71, with interest at the rate of 12 per cent. per annum, and was payable in one year from that date. The note first above described became due and payable on the 6th day of July, 1869, and the other on the 8th of August, 1870. No payments have been made on said notes, or either of them. At the time when the said notes were given, both the said Tennis S. Slingerland and the said bankrupt were, ever since have been, and now are residents of the state of Minnesota. The said claim, demand, and cause of action of the said Tennis S. Slingerland against the estate of said bankrupt did not accrue within six years next before the filing of the petition in bankruptcy by the said bankrupt; neither did any part of said claim, demand and cause of action accrue within six years next before the filing of said petition. Upon the said proceedings, and upon the foregoing facts as stated and agreed to by the counsel for the opposing parties, the following question of law arose as agreed to by said counsel: Can a claim which is barred by the statutes of limitation of the state of Minnesota, be proved so as to entitle the holder to share in the estate of a bankrupt when both the creditor and the bankrupt reside in said state, and have resided therein ever since the debt was contracted, and the debt was contracted therein? And the said parties requested that the same should be certified to the judge for his opinion thereon. Dated at Rochester, August 20th, 1877.    Henry C. Butler, Register in Bankruptcy.

NELSON, District Judge. I answer the question certified in the negative, and agree to the conclusion reached by the learned judge of the Massachusetts district. In re Kingsley [Case No. 7,819]. The rule that no debt may be proved in bankruptcy on which an action could not be maintained against the bankrupt in the state where the petition is filed, in case bankruptcy proceedings were not instituted, commends itself to my judgment. The statute of Minnesota provides that an action could "only be commenced" to enforce the debt referred to in the question

certified within six years. The construction by the supreme court of the state of this statute is, that the bar is complete and the statute need not be pleaded. The fact that it appears upon the face of a complaint that the cause of action is barred by statute, is good ground for demurrer, and for reversal of a judgment upon a writ of error. 11 Minn. 320 [Gil. 224].

---

## Case No. 4,018.

### DOUBLEDAY et al. v. BRACHEO.

[2 Fish. Pat. Cas. 560.] [1]

Circuit Court, S. D. New York. Aug., 1865

INFRINGEMENT OF PATENTS—BONNET STRETCHERS.

Where a patentee claimed "pressing the whole of a bonnet frame, or similar article, at one operation by dies, substantially as specified," and also "forming the side, crown, and flaring face piece of a bonnet frame, in one piece, or at one operation, as specified," and the defendant used a former which was old, but instead of an upper die, used a stretcher, drawing the material tightly over the former—*Held*: That the patent was not infringed.

[Cited in Waterbury Brass Co. v. Miller, Case No. 17,254.]

This was a bill in equity, filed to restrain the defendant from infringing letters patent [No. 15,570] for "improvement in machines for pressing bonnets and bonnet frames," granted to William Osborn August 19, 1856, reissued February 17, 1857; again reissued to Mary J. Osborn, executrix, March 27, 1860 [No. 933], and assigned to complainants.

The claims of the several patents were as follows:

Original patent, dated August 19, 1856: "I do not claim any of the separate parts set forth. Neither do I claim pressing or forming a separate flaring face piece, nor a separate crown piece for bonnets or for bonnet frames. I claim forming the flaring face piece and side crown of a bonnet or a bonnet frame, in one piece, and at one operation, substantially in the manner set forth, and irrespective of the particular form of the bonnet or frame.

Reissued patent, dated February 17, 1857: "I claim pressing the whole of a bonnet or bonnet frame, including the flaring face piece, side crown and tip, at one operation, by dies, substantially as specified, whether said bonnet or frame be formed of one or of several pieces, and irrespective of the particular shape of the bonnet or frame. I also claim forming the side crown and flaring face piece of a bonnet frame, in one piece, or at one operation, as specified."

Reissued patent, dated March 27, 1860: "I claim, etc., first, pressing the whole of a bonnet frame, or similar article, at one operation, by dies, substantially as specified,

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

whether formed of one or of several pieces, and irrespective of the particular size or shape. I also claim forming the side crown, and flaring face piece of a bonnet frame, in one piece, or at one operation, as specified."

George Gifford, for complainants.
W. P. Angel, for defendant.

NELSON, Circuit Justice. The bill, in this case, is filed to enjoin the defendant from the infringement of a patent to William Osborn for a new and useful improvement for pressing all kinds of bonnets, and similar articles, and pressing and forming buckram frames for bonnets. A full description of the means of pressing and forming the bonnet and like articles is given in the specification. The means consist of two dies, an upper and lower of the form or shape required. The lower is of marble or other material that will not rust. The upper is of cast-iron. An arrangement is made for heating, by which the upper die is heated so as to press the articles. The bonnet or bonnet frame is put upon the lower die, and the upper one is lowered on to it by a crank, and is pressed by one impression, or, in other words, is pressed all over at the same time. The patentee then claims: First. "Pressing the whole of a bonnet frame, or similar article, at one operation by dies, substantially as specified, whether framed of one or of several pieces, and irrespective of the particular size or shape. I also claim forming the side crown, and flaring face piece of a bonnet frame, in one piece, or at one operation as specified."

Whether we regard the patent as a combination of the former and upper die in the manner described, or as a process producing the useful result, is not at all material in this case, as the means used by the defendant are substantially different, in either respect. The only instrument similar to the plaintiffs' arrangement used is the former, which is not claimed, and could not be as it is old. No upper die is used, but, in place of it simply a stretcher, which draws tightly the material over the former to produce the requisite shape, excluding the idea of pressure so important in the arrangement of the plaintiffs' improvement. Several advantages are obtained in this mode of forming bonnets and similar articles—an important one, in avoiding the pressure upon the outer surface, which pressure has a tendency to deface, and destroy its beauty, as in the case of velvets and similar fabrics.

The patentee disclaims the separate parts of his arrangement, and the pressing of the crown piece of bonnets, separately by means of dies, but he insists that he was the first to discover the application of dies to the pressing of the whole surface of the bonnet frame, at one operation, whereby the whole article is pressed to its proper shape. And, that by the dies acting upon the whole surface, it became possible to press the entire